UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


ANGELA  BRYANT                              )
                                           )
v.                                         )          NO. 2:06-CV-210
                                           )          (NO. 2:05-CR-20)
UNITED STATES OF AMERICA                    )          Judge Greer
                                           )


## MEMORANDUM  OPINION

            Angela Bryant ("petitioner or Bryant"), a federal prisoner, has filed this

"Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255."

[Doc. 93].  The United States has responded in opposition [Doc. 106] and Bryant has

filed a reply [Doc. 107].  The matter is now ripe for disposition.  The Court has

determined that the files and records in the case conclusively establish that the

petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing

is necessary.  For the reasons which follow, the petitioner's § 2255 motion lacks merit,

and the motion will be denied.

## I.      Procedural Background

            Bryant was indicted by the federal grand jury on March 8, 2005, on a

charge of conspiracy to distribute and possess with the intent to distribute 50 grams or

more of pure methamphetamine.  Pursuant to a negotiated plea agreement, she pled

guilty to the indictment on June 27, 2005.  A presentence report ("PSR") was ordered.

Based on a total offense level of 31 and a criminal history category of I, petitioner's

advisory guidelines range was determined to be 100 to 135 months.  Because Bryant

faced a mandatory minimum term of imprisonment of ten years, her restricted

guidelines range was 120 to 135 months.

Bryant objected to a two level increase in offense level because of a

firearm found in her bedroom and to the failure of the probation officer to apply the

"safety valve" to her case, thus allowing her to avoid the mandatory minimum

sentence.[1]  She also objected to the quantity of methamphetamine used to calculate the

advisory guidelines range and asserted entitlement to an adjustment based on her minor

role in the offense.  After a lengthy hearing on the objections, Bryant's objections were

overruled.  The government moved for a downward departure based on Bryant's

cooperation in the investigation of the case and her testimony at trial against her co-

defendant and recommended that Bryant be sentenced to 84 months of imprisonment.

Bryant was sentenced on January 30, 2006, to a term of imprisonment of

68 months.  Judgment was entered on February 7, 2006.  Bryant did not file a direct

appeal and timely filed the instant motion on September 7, 2006.

---

[1]   18 U.S.C. § 3553(f).

## II.    Factual Background

On February 1, 2005, Carl Marco ("Marco") was arrested by Washington County Sheriff's Department deputies after a high speed chase. While being held at the Washington County Detention Center, Marco made repeated calls to Bryant. Marco's calls from the Washington County Detention Center were recorded. The recordings were reviewed by a sheriff's department investigator who learned that Marco had instructed Bryant to retrieve a package for him at a location near where his car had been stopped by police. Further review of the in-car video of the police chase of Marco revealed that a package had been thrown from the window of Marco's car during the chase. When referring to the package during the recorded calls, Marco was believed to be using coded language for methamphetamine. Through subsequently monitored calls from Marco to Bryant, it was learned that Bryant had retrieved the package and had taken it to her house.

A search warrant was executed at the house of Bryant on February 9, 2005, at approximately 1:30 a.m. Petitioner was present with her two small children. Officers found digital scales, manual scales, baggies, drug notes, marijuana and $240.00 in cash. A loaded .45 caliber semi-automatic pistol was found in a chest of drawers near the bed in petitioner's bedroom and 1.5 ounces of methamphetamine was found under

the bed in a Crown Royal bag. Bryant testified that after retrieving the methamphetamine from the roadside as instructed by Marco she returned with it to her residence and put it in the Crown Royal bag because it was wet. Also at Marco's direction, she divided the 6 ounces of methamphetamine found beside the road into approximately 120 smaller multi-gram quantities, using a set of digital scales that were in the bag with the methamphetamine. The next morning, Bryant had a friend remove the small quantities of methamphetamine from her home concealed in a hair dryer, except for the 1.5 ounces found under her bed, which she also thought had been removed. Marco instructed her to sell the meth, which she thought was worth about $17,000.00.

Prior to the execution of the search warrant, Bryant had been told by Marco that there was a firearm located in the back of a 4-wheeler on a pick-up truck she had moved to her residence at Marco's direction. She testified she found the gun in the 4-wheeler and took it into her residence, where she placed it in the drawer next to her bed, fearing her children might find the weapon. She testified she did not own the firearm, did not know how to use the firearm and did not possess the firearm in connection with the methamphetamine, which she believed had all been removed from her house. After her arrest, Bryant also directed the officers to the methamphetamine which had been removed from her residence.

## III.  Standard of Review

This Court must vacate and set aside petitioner's  sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255.  Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief,  the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief.  *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity,  are not sufficient to warrant a hearing."  *O'Malley*, 285 F.2d at 735 (citations omitted).  A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court set forth a

two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.
> Unless a defendant makes both showings, it cannot be said
> that the conviction . . . resulted from a breakdown in the
> adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687.   As with any other claim under § 2255, the burden of

proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*,

759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the

appropriate measure of attorney performance is "reasonableness under prevailing

professional norms." *Strickland*, 466 U.S. at 688.   A defendant asserting a claim of

ineffective assistance of counsel must "identify the acts or omissions of counsel that are

alleged not to have been the result of reasonable professional judgment." *Id.* at 690.

The evaluation of the objective reasonableness of counsel's performance must be made

"from counsel's perspective at the time of the alleged error and in light of all the

circumstances, and the standard of review is highly deferential." *Kimmelman v.*

*Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## IV.    Analysis and Discussion

In her § 2255 motion, Bryant raises numerous claims, including claims of ineffective assistance of counsel. She argues that: (1) her attorney "made no arguments or called any witnesses in Defendant's sentencing hearing which could help [the Court] understand Defendant's position"; (2) her attorney failed to make arguments on Bryant's behalf that the two level enhancement for the possession of a firearm in connection with the drug trafficking offense was improper; (3) she erroneously failed to receive a reduction in offense level for a mitigating role in the offense; (4) she was erroneously held accountable for the purity of the methamphetamine; (5) the defendant signed a plea agreement at the urging of her attorney "with the assurance from the attorney she would not get any more than two years"; (6) improper investigative techniques and promises of leniency by law enforcement officers; and (7) she should have received a greater downward departure. In her reply to the government's response, Bryant raises additional claims: (1) counsel was "ineffective for waiving Bryant's rights to challenge [appeal] any sentence imposed . . ."; (2) the Court sentenced Bryant "based on responsibility for 170.1 grams" of methamphetamine rather than the 50 "or more" stipulated to in the plea agreement, (3) the government breached the plea agreement "in supporting any enhancement not agreed to in the parameters of the plea agreement signed by Bryant"; and (4) her Sixth Amendment rights were violated because the Court

considered the guidelines to be mandatory, citing *United States v. Booker*, 543 U.S. 220

(2005).                    **A.  Procedural Default**

        As an initial matter, petitioner appears to have procedurally defaulted

several of her claims.  A petitioner is procedurally barred from raising claims in a §

2255 motion, even those of constitutional magnitude, to which no contemporaneous

objection was made or which were not presented on direct appeal.  *U.S. v. Frady*, 456

U.S. at 167-68; *Nagiv v. United States*, 90 F.3d 130, 134 (6th Cir. 1996).  Where a

petitioner has procedurally defaulted a claim by failing to raise it on direct review, the

claim may be raised in a motion under § 2255 only if the defendant first demonstrates

either cause for the default and actual prejudice or that she is actually innocent.  *Bousley*

*v. United States*, 523 U.S. 614, 622 (1998).  The petitioner here makes no claim of

actual innocence.

        A claim of ineffective assistance of counsel may serve as cause excusing

a procedural default.  *See Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).  The

procedural default rule does not apply to claims of ineffective assistance of counsel

because such claims generally are not reviewable on direct appeal, as the record may

be inadequate to review.  *United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998).

"Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it

to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 527-

28 (6th Cir. 2003), *citing United States v. Frady* at 167-68. Furthermore, "the *Frady* cause and prejudice standard applies to a defendant who pleads guilty and first asserts a claim for relief in a collateral proceeding." *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993).

Bryant has procedurally defaulted her claims regarding the firearms enhancement, safety valve, the mitigating role reduction, the purity and quantity of the drugs used to calculate her advisory guidelines sentencing range, her claim for a greater downward departure, her claim that the government breached the plea agreement, her claim of improper investigative techniques, and her Sixth Amendment claim under *Booker*. Bryant does not address cause for her failure to pursue a direct appeal. Presumably, however, it was because of her waiver of her right to file a direct appeal in the plea agreement. Apparently realizing her procedural default, Bryant suggests that her trial attorney was "ineffective for waiving Bryant's rights to challenge any sentence imposed" and argues that the plea agreement was a "one-sided contract of adhesion" and that her right to appeal her sentence could not have been knowingly and voluntarily waived because she did not yet know what her sentence was going to be.

Waivers of rights to appeal are not unenforceable as contracts of adhesion but rather such waivers are routinely enforced by the circuit courts of appeals, including the Sixth Circuit. *See United States v. Yoon*, 398 F.3d 802, 808 (6th Cir. 2005) , *cert. denied*, 126

S. Ct. 548 (2005). Furthermore, Bryant's attorney could not and did not waive Bryant's right to appeal; it was Bryant herself who did so. She signed a plea agreement which clearly set out the waivers of her rights to appeal, acknowledged under oath that she had read the plea agreement, that her attorney had explained the terms of the plea agreement to her and that she fully understood the terms and conditions of her plea agreement. More specifically, she unequivocally acknowledged her understanding that she had expressly waived the right to appeal or collaterally attack her plea or sentence and had discussed the waiver with her attorney. Bryant has offered no facts which would establish that she did not knowingly and willingly enter into her plea agreement and waive her right to file a direct appeal. In short, Bryant has offered no facts to establish good cause for her procedural default of these issues. Moreover, even if not procedurally defaulted, Bryant fails on the merits as to each of these issues.

### 1. The Firearm Enhancement, Safety Valve and Role in Offense

These issues will be discussed together because they are related. United States Sentencing Guideline § 2D1.1(b)(1) provides for a two level increase in offense level if a dangerous weapon (including a firearm) was possessed in connection with a drug trafficking offense. For the enhancement to apply, the government must establish by a preponderance of the evidence that the defendant actually or constructively possessed a firearm during the commission of the offense, thereby raising a presumption

that such possession was connected to the offense.  *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002).  Once the government establishes that the defendant was in possession of a firearm, the burden shifts to the defendant to show that "it was clearly improbable that the weapon was connected to the offense."  *Id.*          Title 18, United States Code, § 3553(f) permits the court to impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence if all requirements of the "safety valve" are met.  In Bryant's case, the pertinent safety valve requirement is that the defendant not "possess a firearm or other dangerous weapon . . . in connection with the offense."  18 U.S.C. § 3553(f)(2).  A defendant who receives the two level enhancement pursuant to § 2D1.1(b)(1) is ineligible for a safety valve reduction.  *United States v. Johnson*, 344 F.3d 562 (6th Cir. 2003); *United States v. Patterson*, 145 Fed. Appx. 988 (6th Cir. 2005).

There was no disagreement at the time of sentencing, nor is there any now, that Bryant's request for an adjustment in her advisory guidelines range for a minor role in the offense pursuant to USSG  § 3B1.2 was moot unless she qualified for "safety valve."  Thus, the firearm enhancement issue had to be decided in Bryant's favor before her arguments on safety valve and role in the offense made any difference because of the mandatory minimum sentence of ten years imprisonment required by statute.

This Court heard extensive testimony about the circumstances involving

Bryant's possession of the firearm at issue, both at the trial of Marco and at Bryant's sentencing hearing.[2]  At the sentencing hearing, the government clearly established both that Bryant possessed the firearm and that she did so during the drug trafficking offense.  The proof clearly established that the firearm was found in a dresser in the master bedroom of Bryant's home in close proximity to approximately one and one half ounces of methamphetamine.  Thus, the burden fell to Bryant to prove then that it was "clearly improbable" that the firearm was connected to the drug offense.  This Court correctly found, at the time of sentencing, for the reasons set forth at pages 39-50 of the transcript of sentencing on January 30, 2006, that she was unable to do so.  Given that the gun enhancement of § 2D1.1(b)(1) was properly applied, Bryant did not qualify for a safety valve reduction and her objection on the grounds that she was entitled to a minor role adjustment was moot.

Bryant raises, for the first time, several other arguments related to the firearm enhancement.  First of all, she argues that the gun enhancement should not be applied because it was never mentioned in either her plea agreement or in the agreed factual basis filed with the Court.  While it is true that neither the plea agreement nor the agreed factual basis mention the firearm, Bryant was clearly on notice that the government would argue that the enhancement would apply.  Furthermore, the plea

_____

[2]  This fact alone makes petitioner's allegation that her attorney failed to make arguments on her behalf regarding the firearm enhancement incredible on its face.

agreement was not made pursuant to Rule 11(c)(1)(C) with an agreed upon sentence the Court was required to impose if it accepted the plea agreement. In fact, the plea agreement provided that the Court "could impose any lawful term of imprisonment up to the statutory maximum" of life imprisonment and that the sentencing determination would be made based upon, among other things, the <u>entire scope</u> of her criminal conduct, not just upon the facts contained in the agreed factual basis. Nor was the Court required to impose a sentence within the guidelines range but rather only to consider the guidelines to "determine an appropriate sentence." In addition, at the time of entry of Bryant's guilty plea, she was advised that the sentencing guidelines were not mandatory, but just one factor the Court would consider in determining an appropriate sentence, and she acknowledged, under oath, that she was aware the Court could impose a sentence more severe than that called for in the advisory guidelines and that the Court could not determine her sentence until a presentence report was prepared. This argument clearly lacks merit.

Bryant next argues that the Court erred in applying an enhancement, *i.e.* the firearms enhancement, that was not included in her plea agreement and that the government breached the plea agreement by arguing for the enhancement. Bryant points to no language in the plea agreement which required the government not to argue in favor of the enhancement and, indeed, no such language appears in the plea

agreement. The plea agreement in this case clearly provided that the sentencing decision in the case would be based in part on the advisory guidelines range and the petitioner thus had reason to be prepared for any enhancement provided for under the guidelines. In addition, nothing requires the government to include every possible enhancement in a plea agreement or risk a finding that the enhancement violated the agreement. *See United States v. Guzman*, 48 Fed. Appx. 158 (6th Cir. 2002). Bryant was advised, both by the Court and in her plea agreement, of the maximum sentence which could be imposed and she points to nothing in this record to establish a breach of the plea agreement by the government.

Lastly, petitioner seeks removal of the gun enhancement because it affects her classification within the Bureau of Prisons and her eligibility for certain Bureau of Prisons' programs. This issue lacks merit since this Court lacks any jurisdiction to require the Bureau of Prisons to permit the petitioner to participate in any particular BOP program and has no authority to remove the gun enhancement for that purpose. *See United States v. Callan*, 96 Fed. Appx. 299, 301 (6th Cir. 2004). Petitioner's argument is without merit.

### 2. Purity and Quantity of Methamphetamine

Bryant's argument with respect to both the purity and the quantity of the methamphetamine for which she was held responsible are not entirely clear, and, with

respect to the quantity argument, almost nonsensical. With respect to her argument as to the purity of the methamphetamine, petitioner states as follows:

> . . . Defendant should not be held accountable for the purity of the drug. Defendant had no knowledge of or control over the amount or purity of the drug that she retrieved from the side of the road. Defendant had no knowledge that the drug she retrieved by the roadside, following the instruction of Mr. Marco, was pure.

In Bryant's reply to the government's response, she seems to relate her arugment with respect to the purity of the drugs to *United States v. Booker*. Her argument with respect to quantity, which she raises for the first time in her reply is stated as follows:

> Bryant believed she would be sentenced based upon the amount of drugs stipulated to within the plea agreement which was 50 "or more" grams and not 50 and more grams. However, the Court sentenced Bryant based on responsibility for 170.1 grams.

Pursuant to her negotiated plea agreement with the government, Bryant pled guilty to the indictment in this case which charged her with a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), that is, the distribution and possession with the intent to distribute 50 grams or more of methamphetamine. The agreed factual basis filed along with Bryant's plea agreement contained a stipulation that agents seized 1.5 ounces of methamphetamine at Bryant's residence on February 9, 2005, and an additional 4.5 ounces of methamphetamine which was recovered by Bryant from along the roadside, for a total of 6 ounces of methamphetamine. During the plea colloquy,

counsel for Bryant called to the Court's attention that a lab report on the analysis of the methamphetamine had not yet been received by the government and provided to the defendant, indicating that it was possible that the weight of the methamphetamine would not support a conviction under § 841(b)(1)(A), but rather a lesser included offense under § 841(b)(1)(B). The government concurred that such could be the case and the Court indicated to Bryant that a motion to withdraw her guilty plea would be favorably entertained if such a set of circumstances developed. Subsequent lab reports, however, confirmed more than 50 grams of pure methamphetamine and the issue was not further considered by the Court.

To the extent that Bryant's argument is that the district court engaged in impermissible judicial fact finding in violation of *Booker*, her argument is without merit. *Booker* "did not eliminate judicial fact finding." *United States v. Coffee*, 434 F.3d 887, 898 (6th Cir. 2006). Rather, "[i]t is clear under the law of this Circuit that a district court may make its own factual findings regarding relevant sentencing factors, and consider those factors in determining a defendant's sentence. *United States v. Gardiner*, 463 F.3d 445, 461 (6th Cir. 2006). "[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Booker*, 543 U.S. at 233. In sum, so long as the sentencing guidelines are treated as advisory and not

mandatory, as they were in this case, *Booker* does not bar the district court from fact finding using a preponderance of the evidence standard for sentencing calculations. *United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006).

According to the lab report received from the Tennessee Bureau of Investigation (exhibit 3 at the Marco trial), the 6 ounces of methamphetamine contained 170.1 grams of actual methamphetamine and petitioner's base offense level was calculated based on at least 50 grams but less than 200 grams of actual methamphetamine. No objection whatsoever was made by the defendant to this calculation in the district court or on appeal. The Court's adoption of both the quantity and purity of the methamphetamine used to calculate the base offense level was established by a clear preponderance of the evidence. There is no *Booker* error in this case. Simply put, there is no error in this record concerning either the weight or the purity of the methamphetamine used to calculate the base offense level since Bryant stipulated to the quantities used in the calculation. To the extent that Bryant is arguing that she was held accountable for a quantity of methamphetamine in excess of that to which she stipulated, such position is clearly contradicted by the record and also is without merit.

**3.     Improper Investigative Techniques and Promises of Leniency By Law Enforcement Officers**

Bryant states this issue as follows in her motion:

The fifth issue presented would be that defendant has been harmed by the improper investigation techniques and the aggressive encouragement from the agents. When cooperating with the government on the morning that defendant turned over the four and half ounces of methamphetamine, the detective from the Washington County Sheriff's Department (Shawn Judy), went to Defendant's father, Jerry Bennett (another officer from the same department), and told him if he could get defendant to cooperate, that she would not be serving any jail time. On reliance upon this meeting, defendant met Mr. Judy to turn over the drugs to him. Officer Judy told defendant that she would be "alright." Mr. Judy then drove defendant to a house where Mr. Presley took the drugs and showed him where they were. Defendant took Mr. Judy into the basement where Mr. Judy removed the drugs and brought them up to the carport. Mr. Judy then took several pictures. Defendant felt uncomfortable and called Mr. Bennett and told him that something didn't feel right. Mr. Bennett told defendant that Mr. Judy would take care of her. Mr. Judy then returned the drugs to the basement and then made several phone calls and defendant, along with Mr. Judy, waited on Mr. Kimbrell of the TBI, Mike Templeton and several others to arrive. No one went into the basement to retrieve the drugs until permission was given from the homeowners, which were in Florida. Defendant was then questioned by Mr. Kimbrell, Mr. Templeton and asked to make a phone call to Mr. Presley which she did. Later that day she talked to Mr. Marco while the agents were listening in and instructing the conversation.

While continuing to cooperate, without an attorney, defendant was told by Mr. Kimbrell on several occasions that he didn't want to lock up a mother of three children and that defendant would be alright if she continued to cooperate, in which she did. Mr. Judy told defendant when picking up some personal belongings from the sheriff's department that she needed to

keep cooperating and that she was basically going to get a
"get out of jail free card."

In short, Bryant alleges that her plea of guilty was involuntary in that it was induced by

promises of leniency made by state law enforcement officers involved in the case.

Bryant's allegations lack credibility and are, in fact, contradicted by the

record in this case.   At the time of Bryant's guilty plea, she was asked specifically about

any promises of leniency or a lighter sentence.   Her answers were as follows:

> Q.    Has any person, including an officer or agent of the
> government, put any pressure on you mentally or physically
> to force you to plead guilty in this case?
>
> A.    No sir.
>
> Q.    Aside from the plea agreement has any officer or agent
> of the government promised or suggested to you that you will
> receive a lighter sentence or any other form of leniency if you
> plead guilty?
>
> A.    No.
>
> Q.    Other than anything contained in your plea agreement?
>
> A.    No sir.

Tr. of Change of Plea, p. 7-8.    Furthermore, petitioner, in her plea agreement,

acknowledged that her plea of guilty was not "as a result of any promises by any agent

of the government apart from this plea agreement." (Doc. 25,  p. 8).   Also, as set forth

above, defendant acknowledged in her plea agreement that the Court had the authority

to impose any lawful sentence in her case up to the statutory maximum.

As set forth in this Court's discussion below at IV.B., where the Court follows the requirements of Rule 11, "the defendant is bound by [her] statements in response to the Court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The petitioner is thus bound to the answer she has provided during the plea colloquy and she cannot not now claim otherwise. To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless. *Warner v. United States*, 975 F.2d 1207, 1212. Bryant was also clearly informed as to the mandatory minimum sentence applicable to her case as well as the maximum sentence which applied to her case and she was clearly informed that the decision as to her ultimate sentence rested with the Court. These instructions should have cured any misapprehension Bryant might have had concerning any representations made to her by local law enforcement officials prior to the entry of her guilty plea. Additionally, Bryant acknowledged in her plea agreement: "20. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States." [Doc. 25]. Bryant cannot now credibly contradict her statements

made in open court under oath or otherwise challenge the voluntary nature of her guilty plea.

### 4.    Downward Departure

Petitioner argues that she "has many reasons for downward departure and not just for her cooperation that should also be taken into consideration for a higher departure."   As previously noted, this Court departed downward from the ten year mandatory minimum sentence to a term of imprisonment of 68 months (a 44% decrease from her guideline range) as a result of the government's motion for downward departure.  She now contends in her motion such things as her "super acceptance of responsibility", her "extreme remorse", the "extraordinary" effect of incarceration on family members, her "minimal role in offense" along with most of the factors she has specifically raised as error in this petition, entitle her to a lower sentence.  As an initial matter, the extent of the downward departure is a matter "entirely committed to the district judge's discretion" and could not have been reviewed on direct appeal.  *See United States v. Jones,* 417 F.3 547 (6th Cir. 2005).   Secondly, a review of the record in this case reveals that all of these factors were called to the attention of the Court by defense counsel at the time of sentencing and through an extensive 24 page sentencing memorandum filed with  the Court and that the Court was fully aware of all of the factors cited by the petitioner at the time of her sentencing.   Nothing in the record

suggests that the Court would have agreed to depart further based on additional evaluation of any of the factors set forth by the petitioner. This argument is without merit.

### 5.     The "*Booker*" Violation

Bryant generally argues in her response, as well as her original motion, that she was sentenced in violation of *United States v. Booker* "because the district court considered the guidelines to be mandatory." She also generally argues a *Booker* violation because she "was sentenced based upon facts not agreed to in the plea agreement."

Bryant's assertion that the Court applied the guidelines as mandatory is erroneous and is not supported by the record. To the extent that Bryant argues that her Sixth Amendment rights were violated based on judge-found facts instead of her own admissions or findings by a jury beyond a reasonable doubt, her argument clearly lacks merit for the reasons set forth above at IV.A.2. This Court treated the guidelines as advisory and not mandatory and the district court is not barred from fact finding using a preponderance of the evidence standard for sentencing calculations. *United States v. Mickins*, 453 F.3d 668, 673 (6th Cir. 2006). As noted above, Bryant was sentenced in this case to a term of imprisonment far below the statutory maximum for her offense of conviction and also well below the mandatory minimum sentence required by statute

based upon the government's motion for downward departure.

### B.  Ineffective Assistance of Counsel

Bryant initially argues that her attorney at the time of sentencing was ineffective because "she had very little communication" with her and because her attorney "made no arguments nor called any witnesses" which could help the Court to understand her arguments.  When a defendant files a § 2255 motion, she must set forth facts which entitled her to relief.  *Green*, 454 F.2d at 53.  Bryant's conclusory allegation without substantiating allegations of fact lacks merit.  She has not made any attempt to set forth any facts to support her conclusory allegation of the lack of communication with her attorney nor attempted to show any prejudice as a result of such alleged lack of communication.  Moreover, she has not identified any specific witnesses, the content of any testimony that might have been given, or the nature of any arguments her attorney allegedly failed to make on her behalf.

The only specific item identified is a letter alleged to have been written by co-defendant Marco "taking full responsibility for the gun," a matter which appears to be irrelevant to and cumulative of the information already known to the Court.  The government did not dispute that the firearm was owned by Marco; however, there was likewise no dispute that Bryant took the firearm from where it was stored outside in the 4-wheeler, carried it inside her house, and placed it in a dresser in the same room as the

methamphetamine. Her explanation that she did so out of fear that her small children might find it in the back of the 4-wheeler lacks credibility in that her small son was in the same room watching TV where the gun was located when the search of the house occurred.

On the other hand, the record establishes that Ms. Stapleton, Bryant's attorney, vigorously presented arguments to the Court, effectively cross examined the government witness, and generally did an able job of presenting Bryant's case to the Court. Likewise her first attorney, Ms. Pierce filed a detailed and lengthy sentencing memorandum that fully set forth Bryant's positions [Doc. 7-2].

Perhaps the most troubling of all the allegations in this case is that Bryant signed a plea agreement at the urging of her attorney, Ms. Pierce, with the *assurance* from the attorney that she would receive no more than two years of imprisonment. Bryant's claim lacks merit, however, for several reasons.

As an initial matter, Bryant has offered no facts to support her allegation that such an assurance was given and has offered no affidavit, not even her own, to that effect. Moreover, the record in this case contradicts Bryant's assertion and establishes quite clearly that no assurance was in fact given. In her written plea agreement, Bryant acknowledged that the Court could "impose any lawful term of imprisonment up to the statutory maximum of life." Plea Agreement, ¶¶ 1(a), 7. She further acknowledged that

she was subject to a mandatory minimum term of imprisonment of ten years, *Id.,* ¶ 2; that her sentence "would be based upon the entire scope of defendant's criminal conduct, defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553"; *Id*., ¶ 7; and that her attorney had "fully explained" the potential penalties to her. *Id.* at ¶ 11. The plea agreement further provided that the "plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea. . ., and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States". *Id.* at ¶ 20.

During the plea colloquy, Bryant acknowledged under oath that she fully understood all the terms and conditions of her plea agreement, that she understood the required mandatory minimum term of imprisonment as well as the maximum statutory penalty, that she understood that the sentence for her case could not be determined until a presentence report was prepared, and that she understood that the Court had the authority to impose a sentence more severe than the sentence called for in the advisory guidelines. [Doc. 102, pp. 4, 9, 11, 12].

This Court scrupulously followed the requirements of Fed. R. Crim. P. 11 and conducted a proper, clear, and thorough plea colloquy. A trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any

confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to her misunderstanding the consequences of her guilty plea". *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993), *cert. denied*, 510 U.S. 1099 (1994). Likewise, where the court follows the requirements of Rule 11, "the defendant is bound by [her] statements in response to the court's inquiry." *Baker*, 781 F.2d at 85. To the extent Bryant suggests that she answered the Court's questions falsely, her decision to lie cannot amount to prejudice under *Strickland*. *Warner*, 975 F.2d at 1212 (citing *Wortham v. Metchem*, 842 F.2d 1179, 1184 (10th Cir. 1988)).

Furthermore, several exchanges between Bryant's attorney and the Court illustrate that Ms. Pierce had not made any assurance to Bryant with respect to a specific sentence. The first occurred on June 6, 2005. Bryant's case had been scheduled for a change of plea hearing on that date and the hearing was rescheduled at Bryant's attorney's request. Bryant's attorney made the following statement to the Court at that time, in the presence of Bryant, while arguing that the Court was not required to take Bryant into custody after her guilty plea:

> MS. PIERCE:                 . . . .
>                 Also, your honor, I believe that her guidelines–if you use the worst –case scenario, and I would have to follow what the government would argue for the worst–case scenario, she's looking at a 10 year mandatory minimum. She has zero criminal history, so, therefore, she

will be safety valve eligible.  You take the base offense level of 32 that the government, you know, indicates they would argue for, obviously that once again is affected by the lab report that we do need.  You take away three for acceptance of responsibility, you take away two for safety valve eligibility, that brings her down to an offense level 27.  Obviously, the factual basis that you have does not detail her role, and, obviously, that's one thing that from the defense perspective we will bring to light at sentencing, and I think there is a good argument that Ms. Bryant could be considered for a minor mitigating role.  That could bring her down 4 additional levels, and I believe that my calculations would have been a 46 to 57 month range.  Obviously from there, if the government would file the departure motion, and even absent the departure motion, with her being safety valve eligible, your honor, you could, you know, conceivably go so far as to give her probation post *Booker.*  I mean, this is a new world that we're living in sentencing wise.

<u>Obviously, I know that the government is not going to agree with that argument</u>, (emphasis added) and realistically it may be that the court chooses to put her in a drug treatment program; and if that's the case, your honor, a 18 to 24 month range sentence, she could self report for that, and that would insure that she get into the program.  I believe that that would constitute exceptional circumstances under 3145 subsection c; but without that being said, I don't think that you can made a decision at this point whether incarceration would necessarily be imposed or not.

Tr. of Proceedings, June 6, 2005, pp. 4-5.

In addition, Ms. Pierce argued for Bryant's release on bond after the entry of her guilty plea on June 27, 2005.  During her argument, the following exchange took place:

MS. PIERCE:      Your Honor, I guess what I wanted

to bring to the court's attention, obviously, we are dealing with a mandatory minimum sentence of 10  years to life in this case under ordinary circumstances; however, Ms. Bryant's case, I think, is an exceptional circumstance in that she is going to be eligible for safety valve; and what I've done – I hope you can read this, I've tried to estimate the guidelines looking at what she would face if she went to trial, that would be the 121 to 151 months.  Assuming that she receives the acceptance of responsibility reduction, that would bring her down 3 levels to 87 to 108 months; and then 2 additional levels for safety valve, <u>which I do believe that she will qualify for</u>, which would bring it down to 70 to 87 months.  I have noted that the court <u>may be able</u> to consider also a role adjustment  in this case from two to four levels.  I know that the government is not in agreement with our position that she should be considered for that role adjustment; but assuming for argument's sake that she does get that four level adjustment, she would be down to the 46 to 57 month range.  It is that range from which, your honor, if she receives any downward departure - - (emphasis added)

. . . .

       THE COURT:     All right.  Mr. Smith, what does the government say about that?

       MR. SMITH:     Your Honor, it's the government's position that 3143 of Title 18 makes this a mandatory detention pending the sentencing in Ms. Bryant's case . . .  To suggest today 2 and a half months before the sentencing hearing, that her guidelines will be this, that or the other thing is dealing entirely in pure speculation .

. . . .

       THE COURT:     . . . .

          The other argument, that is that even

though Ms. Bryant faces a 10 year mandatory minimum sentence, that because of the various factors at work in her case that her guideline range will likely be much less than that and that she will escape the mandatory minimum because of application of the safety valve to her case, that there could potentially be a four level reduction for her role in the offense, that there might potentially be a government motion for downward departure here and that I might ultimately decide that a term of imprisonment is not called for in this case <u>requires me to simply speculate at this point.  I don't know whether any of those things are the case at this time or not</u>. (emphasis added)

Tr. of Proceedings, June 27, 2006, pp. 16, 17, 19-20, 23.

Also, during the plea colloquy itself, Ms. Pierce was asked:

THE COURT:    All right.  Ms.  Pierce, have you made any representations to the defendant as to what sentence I might impose in this case other than to give her an estimate of her advisory guideline sentencing range and to discuss with her the possible application to her case of the mandatory minimum sentence set by statute?

MS. PIERCE:    No, your Honor, only the two things that you've mentioned, I've discussed those both with her.

Tr. of Proceedings, June 27, 2006, pp. 13, 14.

Defendant stood mute in the face of such representation by her attorney and statements by the government, as well as the Court.  She never, at any time prior to the filing of her § 2255 motion, disputed her attorney's statements made in her presence, she never sought to withdraw her plea of guilty and she never expressed any dissatisfaction with her attorney, even during her allocution at sentencing.  The above quoted portions

of the transcripts clearly indicate that while her attorney intended to advocate for application of the safety valve and various other adjustments to Bryant's sentencing range, there was no representation of a specific sentence made to Bryant. Her allegation that she was assured a sentence of 24 months or less by her attorney is simply not credible and is, in fact, contradicted by the record in this case.

## V.   CONCLUSION

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States and her motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificates of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Having examined each of the petitioner's claims  under the *Slack* standard, the Court finds that reasonable jurists could  not find that this Court's dismissal of petitioner's claims was debatable or wrong.  Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by her.

A separate order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
